KEMNITZER, BARRON, & KRIEG, LLP
KRISTIN KEMNITZER Bar No. 278946
ADAM J. MCNEILE     Bar No. 280296
355 S Grand Ave., Ste. 2450
Los Angeles, CA  90071
Telephone:  (415) 632-1900
Facsimile:  (415) 632-1901
kristin@kbklegal.com
adam@kbklegal.com

Counsel for Plaintiff Robert Hossfeld
[Additional counsel appear on signature line]

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ROBERT HOSSFELD, individually and on behalf of others similarly situated,<br><br>             Plaintiff,<br><br>    v.<br><br>DIRECTV, LLC,<br><br>             Defendant.<br>_____/ | **Case No.**<br><br>**CLASS ACTION COMPLAINT**<br>- **for damages and injunctive relief under the Telephone Consumer Protection Act, 47 U.S.C. § 227**<br><br>**DEMAND FOR JURY TRIAL** |

1. "Americans passionately disagree about many things. But they are largely united in their disdain for robocalls." *Barr v. Am. Ass'n of Political Consultants, Inc*, 140 S. Ct. 2335, 2343 (2020). "Telemarketing calls are … intrusive. A great many people object to these calls, which interfere with their lives, tie up their phone lines, and cause confusion and disruption on phone records." *Krakauer v. Dish Network, LLC*, 925 F.3d 643, 649 (4th Cir. 2019).

2. Plaintiff Robert Hossfeld brings this action under the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227, a federal statute enacted in response to the widespread public outrage and disdain for these intrusive, nuisance robocalls. *Mims v. Arrow Fin. Servs., LLC*, 565 U.S. 368, 372 (2012).

3. DIRECTV, LLC ("Defendant" or "DIRECTV") has called Plaintiff's cell phone number multiple times in efforts to sell him its goods or services, even after Plaintiff told DIRECTV to stop calling.

4. The TCPA prohibits telemarketing to consumers who have requested not to receive calls. 47 C.F.R. 64.1200(d). These provisions are known as the "internal do not call" or "company specific" do-not-call rules.

5. Given the automated, incessant, and unwanted nature of these calls, and the cost of litigation as compared with individual recoveries, a class action is the only practicable means of obtaining redress for DIRECTV's illegal telemarketing, and is consistent both with the private right of action afforded by the TCPA and the fairness and efficiency goals of Rule 23 of the Federal Rules of Civil Procedure.

6. Plaintiff seeks an injunction against future calling, plus damages for himself and a class of others who received similar robocalls from or on behalf of DIRECTV after they requested DIRECTV to stop calling.

**INTRODUCTION**

7. Advancements in telephone dialing technology by the 1980s and 90s made reaching a large number of consumers by telephone easier and more cost-

effective. However, this technology has also brought with it an onslaught of unsolicited robocalls, spam text messages, and junk faxes that intrude on individual privacy and waste consumer time and money. As a result, the federal government and numerous states have enacted legislation to combat these widespread telecommunications abuses. As Congress recognized:

> Many customers are outraged over the proliferation of intrusive, nuisance calls to their homes…. Banning such automated or prerecorded telephone calls to the home, except when the receiving party consents to receiving the call or when such calls are necessary in an emergency situation affecting the health and safety of the consumer, is the only effective means of protecting telephone consumers from this nuisance and privacy invasion.

Pub. L. No. 102-243, 105 Stat. 2394 § 2(6, 12) (1991).

8. The TCPA prohibits "initiat[ing] any call for telemarketing purposes to a residential telephone subscriber unless such person or entity has instituted procedures for maintaining a list of persons who request not to receive telemarketing calls made by or on behalf of that person or entity[.]" 47 C.F.R. § 64.1200(d). The procedures instituted must meet certain minimum standards, including but not limited to: (1) having a written policy, available on demand, for maintaining a do-not-call list; (2) informing and training personnel engaged in any aspect of telemarketing on the existence and use of the do-not-call list; (3) recording and honoring do-not-call requests; (4) identifying the caller and person or entity on whose behalf the telemarketing call is being made; (5) applying the do-not-call request to the particular business entity making the call or on whose behalf the call is made; and (6) maintaining a record of a request not to receive further telemarketing calls and honoring such for at least five years from the time the request is made. *Id.*

9. The FCC—which develops the rules and regulations implementing the TCPA—has explained that its "rules generally establish that the party on whose behalf a solicitation is made bears ultimate responsibility for any violations." *In re Rules & Regulations Implementing the TCPA*, 10 FCC Rcd. 12391, at ¶ 13 (1995).

10. The FCC has "repeatedly acknowledged the existence of vicarious liability under the TCPA." *Gomez v. Campbell-Ewald Co.*, 768 F.3d 871, 878 (9th Cir. 2014) (citing *In re Joint Petition Filed by DISH Network, LLC et al. for Declaratory Ruling Concerning the TCPA Rules*, 28 FCC Rcd. 6574 (2013) ("*FCC 2013 Ruling*")). In addition to formal agency, principles of apparent authority and ratification may also provide a basis for vicarious seller liability for TCPA violations. *FCC 2013 Ruling*, 28 FCC Rcd. at 6584 ¶ 28.

## PARTIES

11. Plaintiff Robert Hossfeld is a natural person and a citizen of the State of Texas. At all relevant times, Plaintiff was the subscriber for the cellular residential telephone number that received the calls at issue.

12. The telephone line on which Plaintiff received the calls at issue is and has at all relevant times been a residential account. Plaintiff was a "residential telephone subscriber" pursuant to 47 C.F.R. 64.1100(h), because Plaintiff – personally – was the "party identified in the account records of [the residential consumer account] as responsible for payment of the telephone bill." *Id.* Plaintiff personally, rather than any business, was the subscriber on the subject telephone account. 47 C.F.R. § 64.2305(b), (d).

13. Defendant DIRECTV, LLC is a California limited liability company with a principal place of business at 2260 East Imperial Highway, El Segundo, California 90245.

## JURISDICTION AND VENUE

14. This Court has federal question subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331. *Mims*, 565 U.S. at 372. The Court also has jurisdiction pursuant to the Class Action Fairness Act, 28 U.S.C. § 1332(d)(2).

15. The Court has personal jurisdiction and venue is appropriate in this District under 28 U.S.C. § 1391(a) because DIRECTV maintains its principal place of business in this District, does business in this District, made, authorized,

participated in, approved, or facilitated the calls that are the subject of this lawsuit to Plaintiff and others from this District, and because a substantial portion of the events giving rise to this cause of action occurred in this District.

## FACTS

16. DIRECTV provides television services, as well as telephone and internet bundles, to consumers throughout the United States, including in this District.

17. DIRECTV engages in telemarketing in order to achieve sales, including through third parties.

18. Plaintiff is a consumer who has no relationship with DIRECTV outside of the calls at issue.

19. Since the date four years prior to the filing of this action, Plaintiff has received numerous robocalls telemarketing for DIRECTV on his cell phone, including, among others:

- on November 27, 2020, at 2:55 p.m., from (415) 467-2762,
- on December 15, 2021, at 3:28 p.m., from (254) 320-6135,
- on December 16, 2021, at 12:33 p.m., from (254) 225-2184,
- on January 13, 2022, at 4:00 p.m., from (254) 451-8136,
- on January 14, 2022, at 5:19 p.m., from (254) 447-5129,
- on January 17, 2022, at 11:11 a.m., from (254) 392-4808,
- on January 24, 2022, at 2:48 p.m., from (254) 741-1224,
- on February 9, 2022, at 10:42 a.m., from (254) 338-0806,
- on February 9, 2022, at 3:03 p.m., from (254) 341-5732,
- on April 25, 2022, at 10:30 a.m., from (254) 461-6481, and
- on May 31, 2022, at 11:33 a.m., from (254) 327-7160.

20. In each of these instances, a prerecorded message soliciting television service played when Plaintiff answered the phone, and encouraged him to follow the prompt (i.e., "press 1") for further information.

21. For example, at approximately 2:55 p.m. on November 27, 2020, Plaintiff received a call on his cell phone from (415) 467-2762 that played a prerecorded message that tried to solicit him for a TV/internet package.

22. When Plaintiff followed the call's prerecorded prompt and "pressed 1" for more information, he was connected with a sales representative who attempted to sell him a package for television, internet, and home phone with DIRECTV.

23. The sales representative indicated that Plaintiff would be called back within fifteen minutes by the "approval" department, to complete his order.

24. Plaintiff was indeed called a few minutes later, first from (415) 404-0254 at 3:42 p.m., and then from (415) 785-8949 at 3:51 p.m. In order to find out more information about who was behind this illegal calling, Plaintiff proceeded with the order. The representative informed Plaintiff that he would receive an email confirming his order later that day. Plaintiff informed the caller that he did not want to receive any more calls.

25. As indicated, at 4:15 p.m. a few minutes later, Plaintiff received the confirmation email and Order Summary attached as Exhibit A, reflecting his purchase of a DIRECTV ENTERTAINMENT All Included package through DIRECTV dealer Hayo Telecom, Inc. ("Hayo").

26. Hayo is a DIRECTV/AT&T "Authorized Partner" (a/k/a "Authorized Retailer") whom DIRECTV expressly authorized to sell its goods and services (Dealer ID 40002073).

27. Plaintiff called DIRECTV's (844) 223-4359 customer support phone number and cancelled the order that same day, before the scheduled installation date of November 30, 2020. The DIRECTV representative acknowledged the order and provided Plaintiff with confirmation number 6306587508A for the cancellation.

28. During the call with DIRECTV on November 27, 2020, Plaintiff

indicated that he did not want to be contacted.

29. Also on November 27, 2020, Plaintiff responded "STOP" to a text message he received from or on behalf of DIRECTV meant to confirm his installation appointment.

30. As another example, at approximately 5:19 p.m. on January 14, 2022, Plaintiff received a call on his cellular telephone from (254) 447-5129, which played a prerecorded message soliciting him for television service through DIRECTV. When Plaintiff followed the call's prerecorded prompt to speak with a live representative, he was connected with an individual who attempted to sell Plaintiff a DIRECTV television service plan. The representative confirmed that he was an AT&T/DIRECTV "authorized retailer." After taking down Plaintiff's information and detailing the DIRECTV plan he was soliciting, the representative indicated that "billing" would call Plaintiff to process his order within 24 hours, at which time he would also receive a confirmation email.

31. At approximately 5:56 p.m. on January 14, 2022, Plaintiff received a call from (856) 942-5725, in which the DIRECTV representative – who identified himself as "Jonathan Parker" – followed up on the solicitation call from a few minutes prior. Mr. Parker provided a callback number (703) 646-7037, and confirmed that Plaintiff would receive a call to process his order from DIRECTV's billing department within 24 hours to complete the order.

32. On January 17, 2022, Plaintiff received a robocall from (254) 392-4808 soliciting him for DIRECTV and its parent company AT&T. The call's prerecorded message encouraged Plaintiff to "press 1" to speak with a representative, but when he did so, there was no one on the other end of the line (i.e., dead air).

33. Later that day, Plaintiff called AT&T/DIRECTV and asked to be placed on the do-not-call list. The representative with whom Plaintiff spoke confirmed that Plaintiff's phone number had been placed on the do-not-call list.

34. Despite this, at approximately 2:48 p.m. on January 24, 2022, Plaintiff received a call on his cell phone from (254) 741-1224 that played a prerecorded message for the purpose of soliciting him for DIRECTV.

35. When Plaintiff followed the call's prerecorded prompt and "pressed 1" for more information, he was connected with a live sales representative who attempted to sell him a DIRECTV TV plan.

36. In order to find out more information about who was behind this illegal calling, for example to determine whether the calls were fraudulent, Plaintiff proceeded to the next step. At 3:30 p.m. that same day, Plaintiff received the confirmation email and Order Summary attached as Exhibit B, reflecting that Plaintiff requested a DIRECTV CHOICE All Included package through dealer Nextcom Solutions Corporation ("Nextcom").

37. Nextcom is a DIRECTV/AT&T "Authorized Partner" (a/k/a "Authorized Retailer") whom DIRECTV expressly authorized to sell its goods and services (Dealer ID 40002454).

38. Later that day, before any purchase or installation was consummated, Plaintiff called and cancelled, and indicated his desire not to be called. DIRECTV's representative, who identified himself as "Donovan," confirmed that the order was cancelled, with confirmation number 7151389128. Donovan also confirmed that he was putting Plaintiff on the do-not-call list.

39. Also on January 24, 2022, Plaintiff responded "STOP" to a text message he received from or on behalf of DIRECTV meant to confirm his installation appointment.

40. In the afternoon of January 28, 2022, Plaintiff received a call from (254) 741-1264. The caller identified himself as Will Brown. Mr. Brown told Plaintiff that he worked for DirecTV/AT&T, and that he was calling to follow up on the DIRECTV installation. Plaintiff asked not to be called.

41. On February 1, 2022, Plaintiff received a call from (408) 777-6002.

The representative identified himself as being with DIRECTV/AT&T, and asked Plaintiff how the installation went. Plaintiff again asked not to be called.

42. Thereafter Plaintiff has continued to receive calls from or on behalf of DIRECTV that begin with a prerecorded message and solicit for DIRECTV, including on February 9, 2022, April 25, 2022, and May 31, 2022.

43. After following through the automated prompt during the call on April 25, 2022, Plaintiff again specifically asked not to be called.

44. Plaintiff received additional telemarketing calls from or on behalf of DIRECTV, as well, whether from DIRECTV directly or some yet-unknown authorized DIRECTV retail partner. Given the spoofed and unsolicited nature of the calling, Plaintiff anticipates that the identification of such calls and involved entities will be made in discovery.

45. For example, Plaintiff received another unsolicited sales call on March 23, 2022, at 12:25 p.m., from (254) 741-1494, that generically identified the caller as "Your TV Services." It was only after Plaintiff asked who the caller was with that the representative identified DIRECTV.

46. Plaintiff never signed anything consenting to the calls at issue, let alone any class action waiver or arbitration agreement in connection with DIRECTV or its goods or services.

47. DIRECTV knew about and approved of the telemarketing at issue.

48. DIRECTV has at all relevant times maintained the power and right to control its authorized partners/affiliates like Hayo and Nextcom.

49. Indeed, DIRECTV contracts with its authorized partners/affiliates like Hayo and Nextcom, and expressly authorizes them to market and effectuate sales on its behalf, including through telemarketing like that which Plaintiff and the Class received.

50. On information and belief, DIRECTV retained the right to provide interim instructions to authorized partners/affiliates such as Hayo and Nextcom, as

to the scope, nature, and manner of their telemarketing, such as what potential customers to target in what specific geographic areas and how, to control the branding and pricing for the goods and services it has these third parties solicit, to control employment decisions and require a background check of those soliciting on its behalf, to require its partners/affiliates to maintain records of their calling and other activities on behalf of DIRECTV for inspection, and to unilaterally terminate the relationship by revoking the third party's authority to market and sell its goods and services.

51. DIRECTV provided direct training to Hayo, Nextcom, and other authorized partners/affiliates regarding its products and services, as well as how to market them on DIRECTV's behalf, gave it and its partners access to proprietary information regarding the nature and pricing of its products and services for purposes of generating sales derived from the calling at issue, had the right to approve any advertising on DIRECTV's behalf, and gave its partners the ability to transmit consumer information into its systems, including through a "SARA Plus" order entry service for purposes of tracking and handling consumer transactions arising from the telemarketing at issue.[1]

52. DIRECTV also assigns employees to work with its partners on an ongoing basis to provide support and interim instruction to it and its partners like Hayo and Nextcom.[2]

53. DIRECTV cloaked its authorized partners/affiliates such as Hayo and Nextcom, so as to make it seem to outsiders (including Plaintiff) that the calls were

---

[1] *See* https://www.saraplus.com/about.html (describing "DIRECTV order entry software SARA"); Exhibits A-B (showing that order summary emails to Plaintiff came through SARA).

[2] *See, e.g.,* https://retailer.directv.com/NASApp/directv/PreLogin?content_type=1&z=1648155448380 ("We are committed to helping you grow your business and prosper with DIRECTV. We have Account Managers and Trainers located in regional offices throughout the U.S to assist you with marketing and implementing strategies."). On information and belief, such training has continued since AT&T acquired DIRECTV in 2015.

made with actual authority—including through the permitted use of its tradenames during such calls, contracting with them in the affiliate/retail partner capacity, compensating them for business derived from illegal telemarketing, providing means to record and transfer sales of DIRECTV goods and services derived from such business generation efforts to DIRECV, and retaining revenue and providing the goods and services purchased as a result of such.

54. DIRECTV was aware of the nature of the telemarketing through which Plaintiff and the class were called—including that its partners like Hayo and Nextcom engaged in telemarketing and prerecorded telemarketing—but continued to engage such services, anyway.

55. In fact, it was obvious to Plaintiff that DIRECTV approved of the telemarketing and sales at issue because DIRECTV accepted his and others' orders through these and similar telemarketing vendors. DIRECTV representatives also directly acknowledged the orders when Plaintiff called to cancel them. And DIRECTV's parent company, AT&T, even charged Plaintiff's credit card in connection with such transaction, as reflected in Plaintiff's credit card statement.

56. DIRECTV knowingly accepted advertising benefits and sales that originated through these telemarketing calls, compensated Hayo, Nextcom, and its other partners for sales derived from it, and thereafter provided the products and services purchased through the calling and retained revenue from such.

57. Alternatively, DIRECTV accepted these benefits of the calls at issue, despite knowledge that would have caused a reasonable person to investigate further. For example, DIRECTV has received multiple complaints about consumers' receipt of unwanted DIRECTV telemarketing calls made by it or its (sub)vendors. DIRECTV has also faced formal litigation arising from TCPA robocall violations. *E.g., Brown v. DirecTV, LLC*, 330 F.R.D. 260, 275 (C.D. Cal. 2019) (certifying TCPA robocall class and subclass against DIRECTV in debt collection context).

58. The telemarketing calls made on behalf of DIRECTV used a spoofed caller ID, and failed to properly provide valid contact information for opting out of further calling at the outset. Indeed, the calls frequently spoofed a local caller ID, in order to entice Plaintiff and other recipients to answer based on the deception that the caller was local and, thus, less likely to be the unsolicited telemarketing call it turned out to be.

59. In addition to being a violation of 47 C.F.R. § 64.1200(d), it is a crime to spoof telephone numbers on telemarketing calls, and violators are subject to both a "criminal fine," 47 U.S.C. § 227(e)(5)(B), and possible imprisonment. 47 U.S.C § 501. It is also a crime to knowingly or willfully accept business derived from such.

60. DIRECTV knows that its Do Not Call polices do not call for coordination of DNC lists with its retail partners and all others that telemarket on its behalf, and knew that Plaintiff and those like him were likely to receive additional calls on their behalf from such third parties.

61. Indeed, DIRECTV's internal do-not-call policy expressly does not apply to its "third-party retailers, … even if these retailers engage in telemarketing." Exhibit C.

62. DIRECTV knows that its internal DNC policies are noncompliant with the TCPA. Nevertheless, it has not changed its policies, practices, or procedures to come into compliance on this point.

63. Plaintiff and the Class defined below were damaged by these calls. Their privacy was improperly invaded, the calls temporarily seized and trespassed upon the use of their phones, and they were forced to divert attention away from other activities to address the calls. The calls were annoying and a nuisance and wasted Plaintiff's and class members' time. *See, e.g., Mims*, 565 U.S. at 372 (discussing congressional findings of consumer "outrage" as to autodialed and prerecorded calls).

# CLASS ACTION ALLEGATIONS

64. Plaintiff brings this action under Federal Rules of Civil Procedure 23(b)(2) and (b)(3), on behalf of the following Class:

> All residential telephone subscribers in the United States (i) to whom a call was made for the purpose of encouraging the purchase of DIRECTV goods or services or to find a marketing "lead" for their goods or services, (ii) to such residential telephone line, (iii) where the consumer had previously asked DIRECTV or any of its lead generators or telemarketing (sub)vendors not to call them, and (iv) where there was more than one such call within a 12-month period, at least one of which was made on or after the date four years prior to filing of this action.

65. On information and belief, there are more than 1,000 persons in the Class who were called in 2022 alone.

66. Common questions of law or fact exist as to all members of the Class, which predominate over any questions solely affecting any individual member, including Plaintiff. Such common questions include but are not limited to:

   a. Whether DIRECTV's internal do-not-call policy and practices are in compliance with the TCPA;

   b. Whether DIRECTV is liable for calls made by third parties;

   c. Whether Plaintiff and the Class members are entitled to damages, including whether any violations were performed willfully or knowingly, such that treble damages under 47 U.S.C. § 227(b)(3) and (c)(5) are appropriate; and

   d. Whether injunctive relief is appropriate, and if so, what the order should specifically enjoin to wrench prospective compliance.

67. Plaintiff's claims are typical of the claims of the other members of the Class. The factual and legal bases of liability to Plaintiff and the Class members are the same: DIRECTV violated the TCPA by failing to institute proper procedures for preventing telemarketing to consumers who previously requested not to be called.

68. Plaintiff will fairly and adequately protect the interests of the Class.

Plaintiff is a member of the Class defined herein. He has no interests that might conflict with the interests of the Class, is interested in pursuing his and the Class's claims vigorously, and has retained counsel competent and experienced in class and complex litigation, including with regards to the claims alleged herein.

69. Class action treatment is superior to the alternatives for the fair and efficient adjudication of the controversy alleged herein. Such treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without the duplication of effort and expense that numerous individual actions would entail. There are thousands of members in the Class, such that joinder of all members is impracticable.

70. No difficulties are likely to be encountered in the management of this action that would preclude its maintenance as a class action, and no superior alternative exists for the fair and efficient adjudication of this controversy.

71. DIRECTV has acted and failed to act on grounds generally applicable to Plaintiff and the Class members, thereby making relief appropriate with respect to the Class as a whole. Prosecution of separate actions by individual members of the Class, should they even realize that their rights have been violated, would likely create the risk of inconsistent or varying adjudications with respect to individual members that would establish incompatible standards of conduct.

## COUNT I

**Internal Do-Not-Call Violations of the TCPA, 47 U.S.C. § 227**

72. Plaintiff re-alleges and incorporates the foregoing allegations as if fully set forth herein. Plaintiff brings this Count I on behalf of himself and the Class.

73. The TCPA requires any party that is engaged in telemarketing – including "sellers" who do not make calls themselves – to maintain and honor a written internal do-not-call policy.

74. DIRECTV's written do-not-call policy, Exhibit C, as well as its

procedures, are incorrect and insufficient as to the TCPA's internal do-not-call rules.

75. DIRECTV's policy and procedures exclude do-not-call compliance for third-party retailers of DIRECTV products, goods, and services.

76. DIRECTV's policy and procedures improperly do not call for coordination of internal DNC lists among all those who engage in telemarketing on its behalf, including authorized retailers and their vendors, and no such coordination takes place.

77. DIRECTV's do-not-call policy permits calls to phone numbers that are on its internal do-not-call list, if call recipients provide "consent to receive sales calls."

78. "Consent" does not operate to allow telemarketing calls to phone numbers that are on an internal do not call list. The consent and "existing business relationship" defenses were eliminated from the TCPA's internal do not call regulations in 2003. As the FCC explained eighteen years ago:

> [W]e amend the company-specific do-not-call rules to apply to " any call for telemarketing purposes" to make clear that a company must cease making telemarketing calls to any customer who has made a do-not-call request, regardless of whether they have an EBR with that customer.

*In re Rules and Regulations Implementing the TCPA*, 18 FCC Rcd. 14014 at 14086, ¶124 (Jul 3, 2003).

79. Plaintiff is on DIRECTV's internal do not call list, but received calls on DIRECTV's behalf anyway, because of substantial flaws, legal errors and failures in implementation as to DIRECTV's internal do-not-call policies and practices.

80. DIRECTV's policy and procedures do not call for TCPA or DNC training of all those who telemarket for DIRECTV products and services.

81. DIRECTV's policy and procedures do not contain any policy concerning identification of telemarketers.

82. Indeed, class members often only learn who called them, if ever, after they agree to place an order for DIRECTV products, goods, or services—as Plaintiff himself experienced.

83. Telemarketing calls made on behalf of DIRECTV are often spoofed, and fail to properly identify provide valid contact information.

84. In addition to being a violation of 47 C.F.R. § 64.1200(d), it is a crime to spoof telephone numbers on telemarketing calls, and violators are subject to both a "criminal fine," 47 U.S.C. § 227(e)(5)(B), and possible imprisonment. 47 U.S.C § 501. It is also a crime to knowingly or willfully accept business derived from such.

85. DIRECTV violated the TCPA by not having sufficient internal DNC policies and/or by not following or honoring the policies that it did have.

86. As a result of these violations, Plaintiff and the Class were damaged by DIRECTV's violations, in that they received non-privileged and unsolicited telemarketing calls that invaded their privacy, after having requested to not be called.

87. WHEREFORE, Plaintiff Robert Hossfeld, individually and on behalf of the Class, respectfully requests that the Court enter judgment against DIRECTV for:

    A. Certification of the Class as alleged herein;
    B. Appointment of Plaintiff's counsel as Class Counsel pursuant to Fed. R. Civ. P. 23(g);
    C. A declaration that DIRECTV violated the TCPA as to Plaintiff and the Class;
    D. An injunction to prevent further violations;
    E. Damages pursuant to 47 U.S.C. § 227(c)(5), as applicable;
    F. Costs, expenses, and attorneys' fees, to the extent permitted by law; and

CLASS ACTION COMPLAINT

G. Such other or further relief as the Court deems just and proper.

**JURY DEMAND**

Plaintiff requests a trial by jury of all claims that can be so tried.

Respectfully submitted,

ROBERT HOSSFELD, individually and on behalf of others similarly situated

Dated: June 14, 2022

/s/ *Kristin Kemnitzer*
Kristin Kemnitzer (Cal Bar No. 278946)
kristin@kbklegal.com
Adam J. McNeile (Cal Bar No. 280296)
KEMNITZER, BARRON & KRIEG LLP
355 S Grand Ave., Ste. 2450
Los Angeles, CA  90071
Telephone: (415) 632 1900
Facsimile: (415) 632-1901

Beth E. Terrell (Cal. Bar No. 178181)
bterrell@terrellmarshall.com
Jennifer Rust Murray*
jmurray@terrellmarshall.com
Adrienne D. McEntee*
amcentee@terrellmarshall.com
TERRELL MARSHALL LAW GROUP PLLC
936 N. 34th St., Suite 300
Seattle, WA 98103
Telephone: (206) 816-6603

Alexander H. Burke*
aburke@burkelawllc.com
Daniel J. Marovitch*
dmarovitch@burkelawllc.com
BURKE LAW OFFICES, LLC
909 Davis Street, Suite 500
Evanston, IL 60201
Telephone: (312) 729-5288

*Counsel for Plaintiff*
\* pending *pro hac vice* admission

**Document Preservation Demand**

Plaintiff hereby demands that Defendant take affirmative steps to preserve all recordings, data, databases, call records, consent to receive autodialed or artificial or prerecorded voice calls, e-mails, recordings, documents, and all other

tangible things that relate to the allegations herein, Plaintiff, or the putative class members, or the making of telephone calls, the events described herein, any third party associated with any telephone call, campaign, account, sale, or file associated with Plaintiff or the putative class members, and any account or number or symbol relating to any of them. These materials are very likely relevant to the litigation of this claim. If Defendant is aware of any third party that has possession, custody, or control of any such materials, Plaintiff demands that Defendant request that such third party also take steps to preserve the materials. This demand shall not narrow the scope of any independent document preservation duties of Defendant.

Plaintiff also requests that Defendant and its (sub)vendors stop calling his phone number, (254) 743-8888.

/s/ *Kristin Kemnitzer*
Kristin Kemnitzer